## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

CARLESTER V. FRYSON,

       Petitioner,

v.                                Case No. 4:23-cv-345-WS-MJF

RICKY D. DIXON,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Carlester V. Fryson, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 10. Fryson replied. Doc. 14. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Fryson is not entitled to habeas relief.

### I. Background Facts and Procedural History

On December 3, 2016, Fryson entered a Dollar General store in the Fort Braden community of Leon County, Florida. Fryson was armed with a 9-millimeter handgun. He found the store manager (Ms. Land) in her

office, held the gun to her face and asked her if anyone would miss her and if anyone loved and cared about her. Fryson then cocked the weapon and said, "I'm serious." Doc. 10-3, Ex. K at 38. Fryson demanded the money from the cash registers and the safe.

Land walked to a cash register where a store clerk (Ms. Giddens) was ringing up a customer.[1] Fryson demanded that Giddens open the register drawer and give him the money, but Giddens was unable to open the drawer. Fryson then slapped Giddens across the face with his gun.

Fryson ordered Land to open a different register. As Land tried to open the drawer, Fryson "smacked" Land twice on the head with his gun. Doc. 10-3, Ex. K at 43. Giddens stepped forward to help Land, but Fryson told Giddens "not to do anything stupid." *Id*. at 67-68. Fryson then put the gun to Giddens's forehead and warned, "this [is] not a game," and that he "was going to kill [her] if [she] did not obey." *Id*. at 68. Fryson emphasized his threat by moving his gun from Giddens's forehead to the left side of her head, resting the side of the gun against her left ear, and firing a shot.

---

[1] The trial transcript refers to Giddens as "Waters" because she had married and changed her surname to Waters. *See* Doc. 10-3, Ex. C at 59.

Land's cash register drawer was empty, so Land and Fryson moved to the safe. Land opened the safe and removed U.S. currency as well as a bank bag containing more currency. Fryson took the money and left the store.

Fryson fled the scene in a white Chevrolet truck driven by a female accomplice. While fleeing, Fryson and his accomplice targeted a car in front of them for Fryson to carjack—a Toyota SUV. The accomplice sped up, got in front of the Toyota, and boxed it in. Fryson then jumped from the truck, opened the driver's door of the Toyota, pointed the gun at the driver (Ms. Nucich), and dragged her from the car. Fryson pistol-whipped Nucich, knocked her to the street, and drove off in her car.

Fryson eventually crashed the Toyota and rejoined his accomplice in the Chevrolet truck. The pair was apprehended after their truck broke down.

In Leon County Circuit Court Case No. 2016-CF-3632, Fryson was charged with six crimes: Armed Robbery of Land with a Firearm (Count 1); Armed Robbery of Giddens with a Firearm (Count 2); Armed Carjacking of Nucich with a Firearm (Count 3); and three counts of Aggravated Battery with a Firearm (Counts 4, 5 and 6).

Fryson "faced a 'tsunami' of evidence against him at trial." *Fryson v. State*, 349 So. 3d 476, 477 (Fla. 2st DCA 2022). The evidence consisted of the testimony of the victims, expert testimony, physical evidence, ballistics evidence, and DNA evidence. Land and Giddens identified Fryson as the robber in court and in separate out-of-court photographic lineups. Nucich identified Fryson as the carjacker in a photographic lineup shortly after the carjacking.

Video footage from the Dollar General surveillance camera captured the robbery. Fryson's handgun was recovered from the Toyota SUV he carjacked. A 9-millimeter shell casing was recovered from the floor near the Dollar General's cash registers. A 9-millimeter projectile was recovered from the Dollar General's DVD display. A firearms analyst testified that the projectile recovered from the DVD display likely was fired from the handgun found in the Toyota that Fryson carjacked. DNA evidence linked Fryson to the handgun found in the Toyota. Fryson's defense strategy was to not contest the State's allegations other than the discharge of the firearm during the robbery. Doc. 10-3, Ex. C at 27-29, 56-57.

Prior to submitting the case to the jury, the trial court partially granted a defense motion for JOA on Count 2 and substituted Attempted Armed Robbery as the charge. Doc. 10-3, Ex. C at 281-82. The jury found Fryson guilty of all six charges. *Id*. at 370-74. The jury made specific findings that Fryson possessed and used a firearm during the commission of each crime. In addition, the jury found that Fryson discharged a firearm during the commission of the robbery and attempted robbery. *Id*. at 370-72.

The trial court adjudicated Fryson guilty and sentenced him to 25 years of imprisonment for the Armed Robbery and a concurrent 25-year term of imprisonment for the Attempted Armed Robbery. Doc. 10-4, Ex. D at 13. Each respective sentence included a 20-year mandatory-minimum term of imprisonment for discharging a firearm. *Id*. at 13; *see also* Fla. Stat. § 775.087(2)(a)(2) (2016). The trial court sentenced Fryson to 25 years of imprisonment for the Armed Carjacking, and 25 years of imprisonment for each Aggravated Battery. Doc. 10-4, Ex. D at 13-14. Each of these respective sentences included a 10-year mandatory-minimum term of imprisonment for possession of a firearm. *Id*.; *see also* Fla. Stat. § 775.087(2)(a)(1) (2016). The trial court ran the sentence on

Count 3 consecutive to Counts 1, 2, 4 and 5; and ran the sentence for Count 6 concurrent with Count 3 but consecutive to Counts 1, 2, 4 and 5. Doc. 10-4, Ex. D at 13-14.

The Florida First District Court of Appeal ("First DCA") affirmed the judgment on February 17, 2020, without opinion. *Fryson v. State*, No. 1D19-1128, 291 So. 3d 555 (Fla. 1st DCA 2020) (Table) (per curiam) (copy at Doc. 10-7, Ex. G).

On March 31, 2020, Fryson filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. Doc. 10-8, Ex. H (Mot.); Doc. 10-9, Ex. I (Am. Mot.). The state postconviction trial court conducted an evidentiary hearing and denied relief on all claims. Doc. 10-10, Ex. J (Evidentiary Hr'g Tr.); Doc. 10-11, Ex. K (Order). The First DCA affirmed in a published opinion. *Fryson v. State*, 349 So. 3d 476 (Fla. 1st DCA 2022) (copy at Doc. 10-15, Ex. O). The mandate issued November 14, 2022. Ex. O.

Fryson filed his federal habeas petition on August 3, 2023. Doc. 1 at 1. Fryson's petition raises three claims of ineffective assistance of trial counsel.

## II. Relevant Legal Principles

### A. <u>Section 2254 Standard of Review</u>

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

529 U.S. at 412-13 (O'Connor, J., concurring). In applying the "unreasonable application" clause, the federal court defers to the state court's reasoning unless the state court's application of the governing legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court warned that, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause of § 2254(d)(1), the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (a state court

decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error

correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, however, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## B.    Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of

reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id*. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness

claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter* at 105 (citations omitted).

## III.  DISCUSSION

**Ground One**      **"Petitioner Was Denied His Right To Effective Assistance Of Counsel When Trial Counsel Failed To Explore And Present An Insanity Defense." Doc. 1 at 6.**

Fryson alleges that prior to trial, he informed counsel that "he was in a holy war with outer space aliens" at the time he committed the

crimes; that he had been diagnosed with Bipolar Disorder, and that he was prescribed "psychotherapeutic medication" by medical staff at the county jail while awaiting trial. Doc. 1 at 6. Fryson also alleges that a post-trial mental health assessment arranged by counsel to use for mitigation argument at sentencing revealed that Fryson had PTSD and Bipolar Disorder, experienced trauma as a child, and abused drugs. *See* Doc. 10-11, Ex. K at 303-06 (Assessment Evaluation). Fryson claims that trial counsel was ineffective for failing to use this information prior to trial to develop and present an insanity defense. Doc. 1 at 6-8.

The parties agree that Fryson presented this claim to the state courts in his Rule 3.850 proceeding as "Ground 2." Doc. 1 at 6, 8; Doc. 10 at 13. The State asserts that Fryson is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 10 at 13-17.

## A.    *The State Court's Decision*

The judge who presided over Fryson's trial also presided over his postconviction proceeding. Fryson and his trial counsel (Mr. Knowles) testified at the postconviction evidentiary hearing. After the hearing, the postconviction trial court denied Fryson's claim as follows:

Page 13 of 29

The Defendant testified that he had a history of PTSD and Bi-polar disorder and had told Counsel about this. He also has a history of "hearing voices and delusions" and was on medication. The Defendant says none of this information about his mental health history was brought up at trial, and it should have been.

Mr. Knowles testified that he did not recall a specific conversation with Defendant on the feasibility of presenting an insanity defense. In fact, he recalled there being evidence of the Defendant's substance abuse which would have made an insanity defense "not a viable option." The Defendant admitted that on the day of the incident he was under the influence of "some narcotic."

The Defendant testified that his acts were not his fault because he was on some kind of unknown drugs that someone gave him. In other words, he did not know what he was doing. However, one of the women he robbed at Dollar General testified that when the Defendant initially approached her, she was on a telephone call. He got her attention and then asked if there were people who would miss her, if they cared about her and loved her, and then he cocked the gun and said, "I'm serious." This description of the Defendant's calm, menacing threats belies his claim that he was insane or did not know what he was doing. Drug use does not equal insanity. Likewise, even if there were evidence of the Defendant suffering from PTSD or Bi-polar disorder, that is not evidence of insanity. Mr. Knowles was not ineffective for failing to pursue an insanity defense because there was no evidence to support it.

Doc. 10-11, Ex. K at 7-8 (record citations omitted).

The First DCA affirmed in a written opinion. The opinion opened

by quoting the postconviction trial court's detailed description of the trial

evidence. *Fryson*, 349 So. 3d at 477-78. Concerning Fryson's ineffective assistance claims, the First DCA ruled:

> The trial court correctly denied all of Appellant's postconviction claims based on the lack of any possible prejudice. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ("The likelihood of a different result must be substantial, not just conceivable."); *Maxwell v. Wainwright*, 490 So. 2d 927, 932 (Fla. 1986) ("[Counsel's] clear, substantial deficiency . . . must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined."). And the trial court determined that Appellant's counsel was more credible than Appellant regarding his unsupported claims of ineffective assistance of counsel. *See Wait v. State*, 212 So. 3d 1082, 1085 (Fla. 1st DCA 2017) (explaining that a postconviction court's factual findings are reviewed for competent substantial evidence and that an appellate court "will not substitute its judgment for that of the post-conviction court on questions of fact, the credibility of witnesses, or the weight given to the evidence."). The trial court established that Appellant knew he was facing life in prison, and that his defense counsel's strategy was sound and the only viable strategy in light of the overwhelming evidence of guilt.

> Thus, we affirm the trial court's thorough and thoughtful order.

*Fryson*, 349 So. 3d at 478-79.

### B.    *Fryson Is Not Entitled to Habeas Relief*

The First DCA's decision is not "contrary to" clearly established federal law, because the state court identified and applied the *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Fryson must show that the First DCA's decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence in the state-court record. Fryson fails to make either showing.

This court defers to the First DCA's and the postconviction trial court's findings of fact, because they are amply supported by the trial and postconviction-evidentiary-hearing transcripts, and because Fryson has not rebutted the findings with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." (citing 28 U.S.C. § 2254(e))). This deference extends to the postconviction trial court's determination—which the First DCA

adopted—that Attorney Knowles's evidentiary-hearing testimony was more credible than Fryson's testimony. *Consalvo*, 664 F.3d at 845; *Whatley v. Warden, Ga. Diagnostic and Classification Ctr.*, 927 F.3d 1150, 1177 (11th Cir. 2019) ("[C]redibility-based determinations are findings of fact, therefore, we presume they are correct[.]" (citations omitted)).

Based on the state courts' factual findings and the evidence in the state-court record, a fairminded jurist could agree with the First DCA's conclusion that Fryson failed to establish deficient performance and prejudice under *Strickland*. In Florida, insanity is an affirmative defense. Fla. Stat. § 775.027(1); *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1211 (11th Cir. 2021) (discussing Florida's insanity defense). "To establish the defense, a defendant bears the burden of proving a number of things by 'clear and convincing evidence.'" *Hayes*, 10 F.4th at 1211 (quoting Fla. Stat. §§ 775.027(2), 775.027(1)(a)). The defendant must demonstrate that he "had a mental infirmity, disease, or defect," and that "[b]ecause of this condition," he either "[d]id not know what he . . . was doing or its consequences," or, if he knew what he was doing and its consequences, that he "did not know that what he . . . was doing was

wrong." § 775.027(1). A mental defect alone does not satisfy the legal definition of insanity if the defendant knew the consequences of his actions or knew that what he was doing was wrong. Fla. Stat. §775.027(1); *Hayes*, 10 F.4th 1203 at 1211.

The state court reasonably concluded that Fryson failed to establish that (1) he had a viable insanity defense under Florida law and (2) there was a reasonable probability that a jury would have found by clear and convincing evidence that he met Florida's insanity standard at the time of the offenses. *Hayes*, 10 F.4th at 1211; *see also Mondesir v. Sec'y, Dep't of Corr.*, No. 21-10868, 2022 WL 6645476, at *2 (11th Cir. Oct. 11, 2022) ("The state trial court concluded that Mr. Mondesir did not have a viable defense under Florida law, and we defer to its interpretation of state law.").

The post-trial mental health assessment discloses mental health issues, childhood trauma and drug use, but it does not suggest that Fryson met Florida's insanity standard at the time he committed the offenses. *See* Doc. 10-11, Ex. K at 303-06. Fryson offered no credible evidence at the postconviction evidentiary hearing that his mental health issues rendered him unable to distinguish right from wrong during the

robbery and carjacking, or rendered him unable to know what he was doing and its consequences. Mr. Knowles testified, on the other hand, that the insanity defense was not an option for Fryson because the evidence showed Fryson was not insane and was instead under "the effects of potentially methamphetamine and some other illegal narcotics" when he went on the crime spree. Doc. 10-10, Ex. J at 27-38 (Evidentiary Hr'g Tr.); *see also* Ex. D at 8 (Sentencing Tr.).

Consistent with counsel's testimony, the victims' descriptions of Fryson's actions and statements—detailed in the Background Facts section above—show that Fryson was *not* delusional and instead was calculated, methodical, and wholly aware of why he was there, what he was doing and that it was wrong. Fryson even pre-arranged for an accomplice to help him flee after the robbery.

The state court's rejection of Fryson's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Fryson is not entitled to habeas relief on Ground One.

**Ground Two**                **"Petitioner Was Denied His Right To Effective Assistance Of Counsel When Trial Counsel Failed To Have Clothing Tested For Gunshot Residue." Doc. 1 at 9.**

Fryson claims that trial counsel was ineffective for failing to have his clothing tested for gunshot residue. Doc. 1 at 9. The parties agree that Fryson presented this claim to the state courts in his Rule 3.850 proceeding as "Ground 4." Doc. 1 at 10-11; Doc. 10 at 17. The State asserts that Fryson is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 10 at 17-22.

**A.    *The State Court's Decision***

The state circuit court denied relief on Fryson's claim as follows:

> In this ground the Defendant claims that the clothing he was wearing when he committed his crimes should have been tested for the presence of gunshot residue (GSR), but Mr. Knowles did not make such a request. He claims that because of this omission by Mr. Knowles, the jury was denied information which could have exonerated him.
>
> Mr. Knowles testified that he never considered having the Defendant's clothing tested for gunshot residue. This was because his experience told him that there were problems with the discipline such that the evidence may not have been admissible or helpful to the Defendant's case. The evidence that the Defendant had, in fact, fired the gun during the robbery was compelling. There were several witnesses who heard or saw the Defendant shoot the gun during the commission of the crimes. One witness actually smelled

Page 20 of 29

gunpowder coming from inside the store. A spent shell casing was found near the cash registers. A projectile was eventually found in a display of DVD's, having passed through 22 DVD's before becoming lodged.

The trajectory of the projectile was consistent with it having been fired from the position the Defendant occupied when the cashiers testified he had fired the gun. Further, the record shows that the Defendant's DNA was found on the firearm recovered from the vehicle the Defendant carjacked after he crashed while in high-speed flight from police. Assuming the GSR test results would have been admissible, the likelihood of a positive result seems quite high. Mr. Knowles made a strategic decision not to have the clothing tested. This was a very sound decision, indeed, considering the evidence that the Defendant had fired the gun. Furthermore, the lack of GSR on the Defendant's clothes would not have proved he did not fire the gun during the robbery. Therefore, the Defendant's argument that he would have been exonerated if no GSR evidence were on his clothes is simply not correct.

Doc. 10-11, Ex. K at 9-10 (record citations omitted). The First DCA affirmed, as quoted above. *Fryson*, 349 So. 3d at 478-79.

## B. *Fryson Is Not Entitled To Habeas Relief*

The First DCA's decision is not "contrary to" clearly established federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Fryson must show that the First DCA's decision involved an unreasonable application of the

*Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence in the state-court record. Fryson fails to make either showing.

This court defers to the state courts' findings of fact, because they are amply supported by the trial and postconviction-evidentiary-hearing transcripts, and because Fryson has not rebutted the findings with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845.

In light of these findings, a fairminded jurist could agree with the First DCA's conclusion that Fryson failed to establish prejudice under *Strickland*. Even assuming to Fryson's benefit that he *could have* obtained—and  admitted at trial—a favorable GSR test result on his clothing, Fryson still failed to show that the likelihood of a different trial result was "substantial." *Richter*, 562 U.S. at 112. It was improbable that a jury would have rejected the overwhelming testimonial and ballistics evidence showing that Fryson fired the gun during the robbery, and instead adopted a view for which there was no, or very slight, evidentiary support. Fryson, therefore, is not entitled to habeas relief on Ground Two.

**Ground Three**          **"Petitioner Was Denied His Right To Effective Assistance Of Counsel When Trial Counsel Failed To Have The Store Video Footage Digitally Enhanced." Doc. 1 at 12.**

Fryson claims that trial counsel was ineffective for failing to have the video footage from the store's surveillance camera digitally enhanced. Doc. 1 at 12. Fryson alleges that "[t]he video was of such poor quality that it could not be determined if the firearm was discharged or who the perpetrator was." *Id*. at 12. Fryson does not address the fact that this actually cut in his favor.

The parties agree that Fryson presented this claim to the state courts in his Rule 3.850 proceeding as "Ground 6." Doc. 1 at 13-14; Doc. 10 at 23. The State asserts that Fryson is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 10 at 23-26.

**A.**   *The State Court's Decision*

The state circuit court denied relief on this claim as follows:

> In this ground the Defendant claims that the store security video should have been enhanced. He noted that the security recording had no sound, so no gunshot was heard, and that the jury watched the tape several times before reaching its verdict. The Defendant feels that Mr. Knowles

was "out argued" by the State and that he should not have been found guilty of the charges.

As an initial matter, the Defendant provides no evidence or information that the store video could be enhanced. Still, Mr. Knowles agreed that he did not have the surveillance video enhanced. However, this was because the theory of defense was that the video did not conclusively show the firearm being discharged during the robberies. In Mr. Knowles' opinion, enhancing the video "would not have advanced that theory of defense." Clearly this was a sound, strategic decision given the abundant evidence that the Defendant had, in fact, fired the gun during the robbery.

As discussed in detail in ground 4, there was substantial evidence of the Defendant firing his gun during the commission of the robbery. However, the surveillance video had no sound, and it did not clearly show the firearm's discharge, which left Mr. Knowles the possibility of arguing that the witnesses were mistaken, and the projectile was not found until days after the robbery, so the State could not prove when it was fired. Assuming enhancement of the video had been possible, there is a strong likelihood that the enhancement would confirm the testimony of the witnesses and support the physical evidence that the Defendant had, indeed, fired the gun during the robbery. In light of this, Mr. Knowles' testimony that enhancing the video "would not have advanced [the] theory of defense" is nothing if not an understatement. Certainly Mr. Knowles' strategic decision in this regard was not ineffective assistance of counsel.

Doc. 10-11, Ex. K at 11-12. The First DCA affirmed, as quoted above.

*Fryson*, 349 So. 3d at 478-79.

**B.**    *Fryson Is Not Entitled To Habeas Relief*

Fryson must show that the First DCA's decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence in the state-court record. Fryson fails to make either showing.

Applying AEDPA's "doubly deferential" standard, a fairminded jurist could agree with the state court's conclusion that counsel's strategic decision not to attempt to enhance the video was reasonable given the strong likelihood that enhancement would confirm the testimonial and ballistics evidence that Fryson discharged the firearm. Fryson's conclusory assertion that "[h]ad the video been enhanced, Petitioner would not have been identified on the video discharging the firearm," is pure speculation. Doc. 1 at 14. Fryson offered no evidence in state court to support this claim. Doc. 10-10, Ex. J at 12-13. Thus, the record before the state postconviction court was insufficient to show that Knowles's strategic decision was unreasonable or that enhancing the video likely would have changed the trial result.

Fryson's speculative and conclusory argument falls far short of establishing deficient performance and prejudice under *Strickland*. *See*

*Richter*, 562 U.S. at 105; *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) (speculation is insufficient to meet a habeas petitioner's burden of establishing a *Strickland* violation); *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (rejecting claim that counsel was ineffective for failing to investigate and present additional witnesses because petitioner merely speculated how proposed witnesses would have testified); *Aldridge v. Crickmar*, 680 F. App'x 809, 812 (11th Cir. 2017) (rejecting "purely speculative" *Strickland* claim that counsel's investigation of testifying co-defendant's plea deal and sentence would have revealed prosecutorial misconduct); *Wilson v. Sec'y, Fla. Dep't of Corr.*, 786 F. App'x 878 (11th Cir. 2019).

The First DCA's rejection of Fryson's claim was a reasonable application of the *Strickland* standard and was based on a reasonable determination of the facts in light of the record before the state court. Fryson, therefore, is not entitled to habeas relief on Ground Three.

## IV. A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there

is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.  CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Carlester V. Fryson*, Leon County Circuit Court Case No. 2016-CF-3632, be **DENIED**.

2.    The District Court **DENY** a certificate of appealability.

3.    The clerk of court close this case file.

At Panama City, Florida, this <u>27th</u> day of June, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and**

recommendation. <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only.**</u> **A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**